# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HOIST LIFTRUCK MFG., INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 15 C 4319 |
| | ) |
| AM INDUSTRIAL GROUP, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant AM Industrial Group, LLC's (AMIG) motion to dismiss. For the reasons stated below, the motion to dismiss is denied.

## BACKGROUND

In May 2014, Plaintiff Hoist Liftruck Mfg., Inc. (Hoist) allegedly hired AMIG to perform certain services in accordance with an agreement (Agreement). Under the terms of the Agreement, AMIG allegedly was obligated to devise a "turn key" solution to provide clean air for, and remove dust and waste from, Hoist's plasma cutting operations (Plasma Operations). AMIG was also allegedly obligated to select, sell, and deliver dust filters (Filters) to Hoist. Hoist contends that it followed

1

AMIG's recommendations and purchased the Filters from AMIG, but that the recommendations were flawed and the Filters failed to perform as promised, causing a fire and other damage to Hoist's facility. Hoist includes in its complaint a breach of contract claim (Count I), a negligence claim (Count II), a breach of express warranties claim (Count III), a breach of implied warranty of merchantability claim (Count IV), and a breach of implied warranty of fitness for a particular purpose claim (Count V). AMIG now moves to dismiss the instant action pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that this court lacks personal jurisdiction over AMIG.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party can move to dismiss claims for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of demonstrating the existence of personal jurisdiction. *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). When the court adjudicates a motion to dismiss brought pursuant to Rule 12(b)(2) based on written materials submitted to the court, "the plaintiff need only make out a *prima facie* case of personal jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)(internal quotations omitted). In determining whether the plaintiff has met his burden, the "court accepts all well-pleaded allegations in the complaint as true." *Hyatt Int'l. Corp. v. Coco*, 302 F.3d 707, 712-

13 (7th Cir. 2002). In addition, "the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Purdue Research Found.*, 338 F.3d at 782; *see also Leong v. SAP America, Inc.*, 901 F.Supp. 2d 1058, 1061-62 (N.D. Ill. 2012)(explaining that "when the defendant challenges by declaration a fact alleged in the plaintiff's complaint, the plaintiff has an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction").

## DISCUSSION

AMIG argues that this court lacks personal jurisdiction over AMIG. Personal jurisdiction involves consideration of both federal and state law. *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 756-57 (7th Cir. 2010)(stating that the Court was "still unable to discern an operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction")(internal quotations omitted)(quoting *Hyatt Int'l Corp.*, 302 F.3d at 715). In a case where jurisdiction is premised on diversity subject matter jurisdiction, "[t]he federal constitutional limits of a court's personal jurisdiction . . . are found in the Fourteenth Amendment's due-process clause, . . . which protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations . . . ." *Northern Grain Marketing, LLC v. Greving*, 2014 WL 595767 (7th Cir. 2014)(stating that "[a] forum state's courts may not exercise personal jurisdiction over a nonconsenting, out-of-state defendant unless the

defendant has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'")(internal quotations omitted). A court has general personal jurisdiction over a defendant if the defendant has "continuous and systematic" contacts with the forum that are "sufficiently extensive and pervasive to approximate physical presence." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The court has specific personal jurisdiction over a defendant if "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* at 702 (citation omitted).

AMIG argues that it is an Ohio limited liability company, that its principal place of business is in Ohio, that its members are located in Ohio, and that it has no officers or employees located in Illinois. AMIG further asserts that it has not conducted any substantial, continuous, or systematic business activities that would subject it to general personal jurisdiction in Illinois. Hoist concedes that AMIG is not subject to general personal jurisdiction in Illinois. (Resp. 3 n.2). However, Hoist asserts that AMIG is subject to specific personal jurisdiction based on emails sent to Hoist and a visit to Illinois by an agent of AMIG. Specifically, Hoist contends that when effectuating the Agreement, AMIG's agent Curtis Wyman (Wyman) visited Hoist's facility in Bedford Park, Illinois (Bedford Facility). Hoist further asserts that AMIG sent Wyman to Illinois to gather information to perform its obligations under the Agreement, and that based on Wyman's inspection, AMIG made its

4

recommendations to Hoist. Hoist argues that it suffered a tortious injury and that AMIG's alleged negligence, at least, partially occurred in Illinois.

AMIG contends that its initial business relationship with Hoist arose when Hoist contacted AMIG in Ohio. While AMIG concedes that Wyman visited the Bedford Facility on March 28, 2014 (Visit), Hoist contends that the Visit and inspection related to providing filters for certain welding operations in manufacturing bays (Manufacturing Bays), and that Hoist later declined to make a purchase from AMIG for the Manufacturing Bays. AMIG contends that the price quotes for the filtration devices it sent following the visit did not relate to the Plasma Operations. AMIG claims that it was not until a month after the Visit that Hoist contacted AMIG seeking a price quote for a dust collection system for the Plasma Operations. AMIG also asserts that Hoist took possession of the unit in question for the Plasma Operations in Ohio and the unit was installed by Hoist in Illinois and another company contracted by Hoist to assist in the installation.

Hoist has provided affidavits from two of its employees indicating that during the Visit, Wyman did more than simply inspect the Manufacturing Bays. Hoist's employees contend that during the Visit, Wyman was given information concerning the Plasma Operations and inspected that area in order to gather necessary information for a price quote. Eric Purkey (Purkey) asserts that he is the "COO" of Hoist and that the purpose of the Visit was in part "to obtain detailed specification about the plasma cutting facilities," and that during the Visit, he conveyed to Wyman "detailed specifications and parameters of Hoist's burning operations. . . ." (Purkey

5

Aff. Par. 3, 8-9). Eugene Bayer (Bayer), an employee of Hoist also asserts that Wyman visited Hoist in Illinois in order to address the Plasma Operations. (Bayer Aff. 6). At AMIG's request, the court allowed AMIG to conduct limited discovery and at their depositions, Purkey and Bayer again claimed that Wyman was shown the Plasma Operations and was given details concerning such operations. (Purkey Dep. 22-25); (Bayer Dep. 15). Purkey explains that he walked Wyman around the Bedford Facility, including the "plasma building," and that he explained Hoist's operations. (Purkey Dep. 23-24). Bayer at his deposition contended that he provided Wyman with information concerning the plasma cutting table while Wyman was physically present in the Bedford Facility. (Bayer Dep. 13). Hoist has thus presented evidence showing that, in addition to AMIG's correspondence sent to Hoist in Illinois, AMIG sent a representative to Illinois to gather information, which it then used to further its business with Hoist in Illinois. Under such circumstances, AMIG purposefully directed his activities at Illinois and purposefully availed itself of the privilege of conducting business in Illinois.

AMIG also requests that the court conduct an evidentiary hearing so that Hoist's "unsupported allegations can be subjected to appropriate scrutiny. . . ." (Mot. Evid. 2). However, Hoist has provided more than mere conclusory affidavits. The court granted AMIG leave to depose the affiants in question. The mere fact that AMIG does not like the results of such discovery does not mean that AMIG is entitled at this juncture to further questioning of the affiants in court in an evidentiary hearing. Hoist's representatives offer specific facts in regard to the Visit showing

6

that Wyman was not simply visiting to inspect the welding operations in the Manufacturing Bays. At the very least, the evidence shows that during the Visit, Wyman decided to inspect the Plasma Operations and learn about them. Whether or not Wyman's main intention was to inspect the Manufacturing Bays is not dispositive. If he even allowed himself to be drawn into involvement with the Plasma Operations while in Illinois and then later decided to act upon his observations in Illinois to do business, that is sufficient.

The court also notes that Wyman's own affidavit does not contain direct contradictions of certain facts put forth by Hoist. Wyman does not deny that during the Visit he chose to inspect the Plasma Operations and gathered information about such operations. The evidence shows that Wyman did business with Hoist while physically present in Illinois and engaged in acts in Illinois that Hoist contend were part of the alleged tortious conduct that caused Hoist an injury in Illinois. Although Wyman asserts that "the plasma table was not located in the welding area that Purkey showed [him] for the purpose of quoting prices for devices," Wyman does not deny that he was shown the Plasma Operations during the Visit as Purkey claims. Also, although Wyman contends that Hoist requested price quotes for the "welding area," and that he provided such quotes, Wyman does not deny, as Purkey and Bayer assert, that Wyman was also provided detailed information concerning the Plasma Operations during the Visit. Nowhere in Wyman's affidavit does he claim that he simply pulled the price quote relating to the Plasma Operations that he later sent to Hoist out of the "theoretical air" and that such quote was in no way connected with

7

anything that he saw during his Visit.

Nor is it this court's prior role to act as a factfinder and resolve disputed issues relating to personal jurisdiction at this juncture. *Philos Technologies, Inc. v. Philos & D, Inc.*, 2015 WL 5562178 (7th Cir. 2015)(citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241-42 (5th Cir. 2008), which stated that "[w]hen the defendant disputes the factual bases for jurisdiction, . . . , the court may receive interrogatories, depositions, or any combination of the recognized methods of discovery to help it resolve the jurisdictional issue" and that "even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts")(internal quotations omitted). At this juncture, Hoist is only required to present a prima facie case as to personal jurisdiction. *Purdue Research Foundation*, 338 F.3d at 782-83; *see also Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799-00 (7th Cir. 2014)(stating that "[w]hen the district court holds an evidentiary hearing to determine personal jurisdiction, . . . the plaintiff must establish jurisdiction by a preponderance of the evidence"). Hoist has gone beyond mere allegations as to personal jurisdiction and has provided sufficient evidence to meet its burden. AMIG cannot chose to conduct business with an Illinois company, send its employees to Illinois to conduct such business, and engage in alleged negligence that allegedly caused a fire and other damage, and not in fairness expect to be subject to the personal jurisdiction of the courts in Illinois.

8

Therefore, AMIG's motion to dismiss is denied. AMIG's request for an evidentiary hearing is denied.

## CONCLUSION

Based on the foregoing analysis, AMIG's motion to dismiss and motion for an evidentiary hearing are denied. Hoist's motion for leave to file a sur-reply instanter is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 6, 2015